In the Matter of DIAMOND TERMINAL CORPORATION, Petitioner, v NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE, Respondent.

Third Department, June 21, 1990

### APPEARANCES OF COUNSEL

*Kramer & Fisherman (Marvin E. Kramer* and *Aaron M. Feinberg* of counsel), for petitioner.

*Robert Abrams, Attorney-General (Julie S. Mereson* and *Peter G. Crary* of counsel), for respondent.

### OPINION OF THE COURT

HARVEY, J.

Petitioner was incorporated in 1987 for the purpose of entering into a lease for the operation of a gasoline and motor fuel terminal located at Oceanside, Nassau County. Petitioner's president and sole shareholder is Stanley Coven, who was also president and sole shareholder of another terminal, Milano Equities, Inc. (hereinafter Milano). In July 1987, petitioner filed an application with respondent for a terminal operator's license. At the same time, a terminal operator application was allegedly filed for Milano to operate a terminal in the City of Mount Vernon, Westchester County. In December 1987, respondent's Audit Division issued to each corporation identical notices of a proposed refusal to license. Two grounds were listed for the refusal, with the first of them stating: "(1) Pursuant to Tax Law Sec. 283-b (2) (g), Stanley Coven, who is the President, 100% shareholder and/or a

responsible employee of the applicant, has committed acts specified in Tax Law Sec. 283-b (4) within the last five years, specifically, he has failed to comply with provisions of Article 12A or Article 28 of the Tax Law with respect to motor fuel or rules or regulations adopted pursuant thereto, by failing to timely file returns and pay taxes." Petitioner thereafter timely filed a petition challenging the proposed denial of its license. In the letter dated March 7, 1988 informing petitioner of the date of its administrative hearing, petitioner was also informed that respondent was withdrawing the second ground of its denial although the first would still stand. In that same letter respondent offered an additional justification for the denial of its license: "Specifically, [Coven] is also the President, 100% shareholder and/or a responsible employee of Milano * * * which corporation operated a motor fuel terminal without a terminal operators license as required by Tax Law Sec. 283-b, subd. 1, and did not file the terminal operators reports required pursuant to Tax Law Sec. 286, subd. 2 and 20 NYCRR 410.11. Operation of a terminal without a license and failure to file terminal operators reports are each failures to comply with provisions of Article 12-A within the meaning and intent of Tax Law Sec. 283-b, subd. 4, and are, therefore, a proper basis for denial of a terminal operator's license in accordance with Tax Law Sec. 283-b, subd. 2, par. (g)."

At the commencement of the hearing to review the proposed denial, petitioner objected to the additional allegations contained in the March 7, 1988 letter. The Hearing Officer denied petitioner's motion to dismiss for lack of notice but offered a 30-day adjournment to provide time to prepare an additional defense. Petitioner declined this offer but took exception to the Hearing Officer's determination. Ultimately, following several days of hearings, the Hearing Officer rejected all of petitioner's arguments and concluded that its application for a license was properly denied. Petitioner appealed this determination to the Tax Appeals Tribunal alleging errors in the Hearing Officer's findings of fact and conclusions of law. The Tribunal adopted all but one of the Hearing Officer's findings of fact and affirmed the denial of petitioner's application. Petitioner thereafter initiated this CPLR article 78 proceeding to challenge that determination.

■ The Tribunal's determination must be confirmed. Initially, we reject petitioner's contention that it was deprived of due process because it lacked sufficient notice regarding respondent's intention to deny its license application based upon

the actions of Milano. Fundamental due process requires reasonable notice sufficient to allow a party to adequately prepare and present a defense to charges that will be the subject of a hearing (see, State Administrative Procedure Act § 301; see also, Matter of Fitzgerald v Libous, 44 NY2d 660, 661). This due process request applies to procedures related to statutorily required licensing (see, State Administrative Procedure Act § 401).

The letter dated March 7, 1988 advising petitioner of the additional reason for the denial was specific in its reason for the denial by outlining the sections of the Tax Law that Coven allegedly violated and the manner in which he did so. The timing of respondent's notification did not make the notice unreasonable. The record establishes that petitioner was able to respond effectively to the charge (see, Matter of Flaherty v Fogg, 72 AD2d 861, 862). Additionally, the hearing to review the denial consisted of five hearing days spread over almost three weeks. This also provided petitioner with an opportunity to prepare a defense (see, Matter of Bryant v Mann, — AD2d — [Apr. 5, 1990]). The fact that petitioner was apprised of the additional ground before the hearing also supports a finding that the notice given was sufficient under those circumstances (see, Matter of Heckt v City of Lackawanna, 44 AD2d 763, lv denied, appeal dismissed 35 NY2d 756). Lastly, petitioner's declination of the Hearing Officer's offer of a 30-day adjournment undermines petitioner's argument of lack of notice (see, Matter of Marquart v Perales, 142 AD2d 678, 679; Matter of Pachucki v Walters, 56 AD2d 677). Since petitioner's allegations of prejudice are unconvincing, we can find no basis for disturbing the Tribunal's determination on that ground.

Next, we consider petitioner's contention that it was arbitrary and capricious for respondent to deny its license application based on the actions of Milano. There is no dispute that Coven was sole shareholder of both Milano and petitioner and that Milano, in fact, operated a fuel oil terminal without a license. Tax Law § 283-b (2)* provides, in relevant part, that: "Where a person files an application for a license under this section and in considering such application the tax commission ascertains that * * * (g) the applicant, an officer, director or partner of the applicant, a shareholder directly or indirectly owning more than ten percent of the number of shares

---

* All references made in this decision to Tax Law § 283-b and its subdivisions are to the version that was effective until July 1, 1989.

of stock of such applicant (where such applicant is a corporation) * * * or an employee of such applicant under a duty to act for such applicant in complying with any requirement of this article, *has committed any of the acts specified in [Tax Law § 283-b (4)] within the preceding five years, the tax commission may refuse to grant such applicant a license"* (emphasis supplied). Tax Law § 283-b (4) lists the grounds that can be considered for the cancellation and suspension of existing licenses and provides:

"The license of any terminal operator may be cancelled or suspended by the tax commission upon its failure to file a bond or other security when required or when the amount thereof is increased or to comply with any of the provisions of this article or article twenty-eight of this chapter with respect to motor fuel or any rule or regulation with respect to motor fuel adopted pursuant to such articles by the department of taxation and finance or by the tax commission or upon its knowingly aiding and abetting another person in violating any of the provisions of such articles or of any such rule or regulation with respect to motor fuel or upon its transfer of its license as a terminal operator. A license may *also* be cancelled or suspended if the tax commission determines that a licensee or an officer, director, shareholder, employee or partner of the licensee who as such officer, director, shareholder, employee or partner is under a duty to act for such licensee:

"(i) commits fraud or deceit in his operations as a terminal operator or has committed fraud or deceit in procuring his license;

"(ii) has been convicted in a court of competent jurisdiction, either within or without the state, of a felony, within the meaning of subdivision eight of section two hundred eighty-three of this article, bearing on such terminal operator's duties and obligations under this chapter;

"(iii) has knowingly aided and abetted a person who is not registered as a distributor in the importation, production, refining, manufacture or compounding of motor fuel; or

"(iv) has knowingly aided and abetted the distribution of motor fuel which he has knowledge of as being imported, caused to be imported, produced, refined, manufactured or compounded by a distributor who is not registered by the department of taxation and finance" (emphasis supplied).

■ Relying upon Tax Law § 283-b (2) (g), the Tribunal found

that Milano's activities in operating a terminal without a license were a proper basis upon which to deny petitioner's license because Coven, an officer and shareholder of petitioner, the applicant (Tax Law § 283-b [2] [g]), committed through Milano an act specified in Tax Law § 283-b (4), namely, violating the provisions of Tax Law article 12-A by operating Milano as a terminal without a license. Petitioner, on the other hand, contends that the ground alleged by respondent in denying petitioner's license (Milano's violation of statute) could not be imputed to Coven under the wording of Tax Law § 283-b (4). Basically, petitioner argues that because Coven is an individual rather than a corporation and only the additional acts described in paragraphs (i) through (iv) of Tax Law § 283-b (4) refer to individuals, then only those four acts can be considered for purposes of Tax Law § 283-b (2) (g). Since none of those acts was deemed to apply here, petitioner maintains that respondent acted improperly. However, respondent persuasively points out that Tax Law § 283-b (2) (g) incorporates by reference *all acts* enumerated in subdivision (4) and does not limit itself to the acts described in paragraphs (i) through (iv). Respondent asserts that the four acts listed as paragraphs (i) through (iv) are clearly made *additional* to those acts mentioned in the first part of the subdivision by use of the word "also". Significantly, in making its decision, the Tribunal also considered that Tax Law § 283-b (2) (e), which provides that a license may be denied to an applicant whose officer or owner also owns or was an officer of another corporation at the time that the other corporation's license was canceled or suspended. The Tribunal noted that it would be an anomalous result if an application by petitioner would undisputably be denied pursuant to Tax Law § 283-b (2) (e) if Milano had an existing license that was later canceled or suspended but that petitioner's application could not be denied in this case when Milano was closed down for operating without a license at all.

In any event, even if petitioner is correct in its assertion that the technical wording of the applicable statutes creates a loophole in its favor, we agree with respondent that to allow such a construction would fly in the face of the Legislature's intent. As noted by the Tribunal in its decision, the enactment of Tax Law § 283-b by Laws of 1986 (ch 276) was the "culmination of legislative and executive efforts to combat massive evasion of the excise and sales taxes imposed on motor fuel by Articles 12-A and 28 and pursuant to the authority of Article

29 of the Tax Law". In a memorandum in support of the legislation it was pointed out that "the bill would enable [respondent] to examine more closely the persons involved in the importation process * * * by expanding the provisions of law regarding the registration of distributors and the cancellation and suspension of registrations. *The expanded provisions would permit an examination into the character of persons controlling the distributor and would make it more difficult to circumvent the statutory standards*" (mem of Commr of Taxation & Fin, Governor's Bill Jacket, L 1986, ch 276 [emphasis supplied]). It is a well-settled rule that "[t]he letter of a statute is not to be slavishly followed when it leads away from the true intent and purpose of the Legislature" (McKinney's Cons Laws of NY, Book 1, Statutes § 111, at 226-227). Since part of the general purpose behind the enactment of Tax Law § 283-b was to discourage potential and present terminal operators from hiding behind different corporate names and thereby circumvent the goals of the licensing process, the determination to deny a license to petitioner in this case was a proper one.

The remaining arguments of petitioner have been examined and have been found to be without merit.

CASEY, J. P., WEISS, MIKOLL and MERCURE, JJ., concur.

Determination confirmed, and petition dismissed, without costs.